(43 Misc. Rep. 132.)

### FREELAND v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Trial Term, Kings County. March, 1904.)

1. STREET RAILROADS—COLLISION WITH VEHICLE—INJURY TO PASSENGER—NEGLIGENCE—QUESTION FOR JURY.

Where evidence showed that the street car on which plaintiff was a passenger was moving rapidly at the time of a collision with a truck, and that plaintiff would not have been injured, had not the attempt of the driver of the truck to get out of the way of the car been defeated by the wheel of the truck catching in a disused frog in the track, thereby causing the truck to swerve on snow and ice and hit the car, it was a question of fact for the jury whether defendant maintained the street at a point where the frog was in a reasonably safe condition.

2. SAME—CONDITION OF TRACK—DUTY OF STREET CAR COMPANY.

A street car company, on making use of a public street which was safe prior to that time, is liable to a passenger injured in a collision between the car and a truck, if the cause of the accident was the failure of the company to restore the street to its former safe condition.

Action by Maria L. Freeland against the Brooklyn Heights Railroad Company. Motion by defendant for a new trial on the minutes. Motion denied.

James C. Cropsey, for plaintiff.
Clarke Day, for defendant.

FORBES, J. This is an action of negligence. The action was brought in part 3 before a jury.

The plaintiff was a passenger riding upon one of the defendant's street cars, going down a grade in the direction of Fulton Ferry. A portion of the street was being occupied by wagons unloading in front of a warehouse on the right-hand side. A cart driver, having a high and heavy load of coke—about 3½ tons—was approaching the car on the same track. The driver turned out on the right-hand side to get out of the way of the car, when one of the truck wheels caught against a frog constructed in the defendant's track, on a curve at or near Sands and Fulton streets, in Brooklyn. After the team had passed by the front part, and partly along the car—the car running, as the plaintiff claims, at a high rate of speed—the driver's wagon slewed around upon the snow and ice, the upper part of the wagon box striking the car, breaking two or three of the stanchions, and thus driving these pieces and the glass from the windows of the car upon the plaintiff, who was sitting on that side of the car, and in this manner the injuries were caused for which the action is sought to be maintained. The jury rendered a verdict in favor of the plaintiff for $450 for the injuries sustained.

A motion was made for a new trial upon the minutes, under section 999, Code Civ. Proc., and the question arises whether there was a ques-

tion of fact for the jury.   A case is cited by the defendant's counsel, reported in Alexander v. R. C. & B. R. R. Co., 128 N. Y. 13, 27 N. E. 950, arising in the city of Rochester, N. Y.   The defendant claims that the facts of the case cited are exactly in point.   The case at bar was submitted to the jury upon the theory that the car was running at a high rate of speed; that the driver was on the right side of the track; that the motorman of the defendant corporation was careless and inattentive to his duty, and that the accident probably would not have occurred, as shown by the testimony of the defendant, had not the wheel of the coke wagon caught upon an abandoned frog lying in the defendant's track, which thus caused the wagon to slew around, break the window, and caused the injury.   There were two concurrent causes which contributed to the injury.

It is asserted, on the part of the defendant, that there was plenty of room to pass, had the driver performed his duty, and that, with the snow and ice upon the track and upon the street, the motorman was not bound to apprehend that the accident ·might occur, and that he used reasonable care and caution in proceeding on his way in the discharge of his duty.   The difficulty about the proposition is, in my judgment, that the proximate cause was not the snow and ice upon the track, but that the track was so constructed, at the point in question, as that when the wheel struck the frog it was held there, and prevented from going upon the side of the street.   In that manner it was thrown violently against the car.   The driver makes this plain.   He says he could not get out any further, that the snow prevented his going into the gutter on his side—as he testified:

"I could have passed him, only for the frog.  There is a curve comes around, and I slid on that.  That is just below the corner of Sands, where it starts, and a curve runs around.  That is a switch where they used to switch them up Sands and Fulton.  There was a frog lying there."

It may be said that this came from the negligence of the driver, but it must be remembered that the motorman was operating this car; was familiar with the track and street at that point, and with the situation of the switch and frog.   He knew that the driver was approaching him upon the same track upon which his car was running, coming up a hill, and, instead of stopping his car before he reached the place where the accident occurred, giving the driver of the wagon an opportunity to get out in safety, he kept his car in motion until the wagon struck the car and caused the mischief of which the plaintiff complains.   This was a question for the jury.   Adsit v. Catskill Electric R. Co. (Sup.) 84 N. Y. Supp. 393.

The facts in the case in 128 N. Y. 13, 27 N. E. 950, are somewhat similar to the case at bar, but it was not like the case in question.   In that action the driver was coming from an opposite direction, but upon another track, with a cart or wagon heavily loaded with lumber, which projected far beyond the truck; and, while in the middle of the block, in a place of perfect safety, had he pursued his way without turning off, the car would have passed him without danger.   The driver, as the car passed the front end of the truck, suddenly turned off away from the track; and, in attempting to get upon another part of the street, the truck slewed around, and the projecting timber crashed

through the glass and injured a passenger sitting on that side. In that case the motorman might well have apprehended that no danger was to come to the car, since the accident was wholly caused by the sudden change of the position of the vehicles, and was caused wholly by the negligence or inattention of the truck driver.

There is no question in the case at bar that if there had been plenty of room to pass the car, and the accident was caused merely by the snow and ice on the side of the street throwing the truck into the side of the car, this action could not have been maintained, and a nonsuit would have been granted. The question of the defendant's negligence was submitted to the jury upon the theory that there was a question of fact for them to determine. 84 N. Y. Supp. 393.

It is contended on the part of the defense that the construction of the frog upon the surface of the street was one which was usual, that no accident had occurred in the same manner prior to the one in question, and that from these conditions it must be inferred that the motorman used reasonable and prudent care in not stopping his car and giving the truckman an opportunity to pass. The case of Fahner v. Brooklyn Heights R. R. Co., 86 App. Div. 488, 83 N. Y. Supp. 815, is cited as sustaining this proposition. But it will be seen, by the case cited, that the accident occurred at an elevated railroad station, in the following manner:

"As the plaintiff approached the tower, a passenger who had preceded him permitted one of the doors to fly back into plaintiff's face. To prevent the door from striking him, the plaintiff put up his arm, which passed through the glass in the door, cutting him quite severely."

The question of fact was submitted to the jury, but that accident clearly occurred from the carelessness of the passenger who preceded the plaintiff. That the proximate cause of the injury was not the construction of the doors, nor the manner of their being operated, but solely from the manner in which the preceding passenger operated the doors; and the verdict was properly set aside. The principle there laid down ought to be sustained.

In the case at bar the defendant corporation undoubtedly had a right to occupy the street for the operation of its cars while in use, but did it leave the street in a reasonably safe and suitable condition for public travel at this point, where its abandoned or unused switch and frog were located? This was a question of fact for the jury, since if the track was so constructed and left that an accident was likely to occur, as in the case at bar, then the defendant corporation had not performed its duty to these passengers and the public. A foot passenger or a vehicle has the right to be upon any portion of the public highway, in the use thereof, and, if the construction of the defendant corporation's track became a nuisance, the elements of negligence and contributory negligence do not apply. One making use of a public street, which was safe prior to that time, is not at liberty to construct a track which cannot be operated and used by the traveling public with reasonable safety; and, while it may be said that no accident was disclosed to have occurred at this point, still it is reasonable to say that, under the same circumstances, an accident could not have been avoided, or one was very likely to occur. In using the street, it was the duty of the defendant corpora-

tion to restore it to its former usefulness, and so maintain it for the safety of the public. These facts lead me to the conclusion that the motion for a new trial must be denied, with costs.

Motion denied, with costs.

